# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

Validata Chemical Services, Inc.,　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　Plaintiff,　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　v.　　　　　　　　　　　　　　)　　　Civil Action No. 16-577
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)　　　(Judge Charles Lettow)
　　　　　　　　　　　　　　　　　　　　)
United States Department of Energy, et al.,　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　Defendants.　　　　　)
　　　　　　　　　　　　　　　　　　　　)

## DEFENDANT'S MOTION TO DISMISS RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND CROSS-MOTION FOR <u>JUDGMENT ON THE ADMINISTRATIVE RECORD</u>

OF COUNSEL:

MARC KASISCHKE
Attorney
Office of the Assistant General Counsel for
Litigation, GC-31
U.S. Department of Energy
1000 Independence Avenue, S.W.
Washington, DC 20585

MARY COPELAND
Attorney
General and Contract Law
U.S. Department of Energy
Oak Ridge Office
P.O. Box 2001
Oak Ridge, TN 37831-8510

KAREN M. HOLZEN
Trial Attorney
Office of General Counsel
U.S. Small Business Administration
409 3rd Street, SW
Washington, DC 20416

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

DOUGLAS K. MICKLE
Assistant Director

ELIZABETH ANNE SPECK
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, DC 20044
Tel: (202) 307-0369
Fax: (202) 305-7643

September 1, 2016　　　　　　　　　　　Attorneys for Defendant

-TABLE OF CONTENTS-

Page

TABLE OF AUTHORITIES .......................................................................................... i

QUESTIONS PRESENTED ........................................................................................... 2

STATEMENT OF FACTS .............................................................................................. 3

    I.       Nature Of The Case ........................................................................................ 3

    II.      Statement Of Facts ......................................................................................... 3

          A.     UCOR's Solicitation And Award To Portage Of A Subcontract For Data Validation Services ................................................................. 3

          B.     UCOR's Post-Award Correspondence With Validata .............................. 4

          C.     UCOR's NAICS Code Appeal ................................................................. 6

          D.     Validata's District Court Complaint ....................................................... 6

SUMMARY OF THE ARGUMENT ............................................................................. 8

ARGUMENT ................................................................................................................ 10

    I.       The Court Does Not Possess Jurisdiction To Entertain This Bid Protest Action And To Award The Relief Requested By the Plaintiff ......................................... 10

          A.     Standard Of Review For A Motion To Dismiss For Lack Of Subject Matter Jurisdiction ............................................................................... 10

          B.     This Court Will Not Possess Jurisdiction To Decide This Case ................. 11

          C.     UCOR Is Not A "Federal Agency" Pursuant To 28 U.S.C. § 1491(b)(1) And Therefore Jurisdiction Cannot Be Established Under The Tucker Act ........................................................................................ 15

          D.     Validata Is Not An "Interested Party" With Standing To Bring A Bid Protest ................................................................................................. 20

          E.     The Court Does Not Possess Jurisdiction To Award Lost Profits ............ 27

          F.     This Court Does Not Possess Jurisdiction To Decide Claims Under The APA ................................................................................................ 27

    II.      Validata's Claims Fail On The Merits ........................................................... 28

          A.     Standard Of Review For A Motion For Judgment On The Administrative Record ......................................................................... 28

          B.     Validata Failed To File A Timely NAICS Code Protest .......................... 29

               1.     Statutory And Regulatory Background For NAICS Code Protests ........................................................................................ 29

2.    OHA Correctly Dismissed Validata's NAICS Code Protest
Because Validata's Protest Was Untimely And Validata Was
On Notice Regarding The Applicable NAICS Code ................... 30

C.    There Is No Merit To Validata's Untimely Size Protest.......................... 32

D.    Validata Has Failed To Establish That The Government Acted In Bad
Faith ............................................................................................. 36

E.    Validata Is Not Entitled To Bid Preparation And Proposal Costs ........... 38

CONCLUSION ............................................................................................. 40

-TABLE OF AUTHORITIES-

Page

**Cases and Administrative Decisions**

*Advance Constr. Servs., Inc. v. United States,*
   51 Fed. Cl. 362  (2002) ............................................................ 15

*Advanced Data Concepts, Inc. v. United States,*
   216 F.3d 1054 (Fed. Cir. 2000) ............................................... 28, 35

*Advanced Sys. Tech., Inc. v. United States,*
   69 Fed. Cl. 474 (2006) ............................................................ 4, 29

*Alaska Central Express, Inc. v. United States,*
   50 Fed. Cl. 510 (2001) ............................................... 23, 24, 25, 26

*Alfa Laval Separation v. United States,*
   47 Fed. Cl. 305 (2000) ............................................................ 39

*American Fed'n of Government Employees v. United States,*
   258 F.3d 1294 (Fed. Cir. 2001) ................................................ passim

*Anderson v. United States,*
   344 F.3d 1343 (Fed. Cir. 2003) ................................................ 11

*Armstrong* v. *FAA,*
   515 F.3d 1294 (D.C. Cir. 2008) ................................................ 14

*Banknote Corp. of Am. v. United States,*
   365 F.3d 1345 (Fed. Cir. 2004) ................................................ 27

*Bannum, Inc. v. United States,*
   404 F.3d 1346 (Fed. Cir. 2005) ................................................ 28, 29

*Bell BCI Co. v. United States,*
   56 Fed. Cl. 465 (2003) ............................................................ 15

*Blue Water Environmental, Inc. v. United States,*
   60 Fed. Cl. 48 (2004) ............................................................ 15, 16, 17

*Carolina Tobacco Co. v. Bureau of Customs & Border Prot.,*
   402 F.3d 1345 (Fed. Cir. 2005) ................................................ 36

*Century Expl. New Orleans, LLC v. United States,*
   110 Fed. Cl. 148 (2013) .......................................................... 27

*CGS Administrators, LLC v. United States,*
  110 Fed. Cl. 431 (2013) .................................................................................. 35

*CNA Corp. v. United States,*
  83 Fed. Cl. 1 (2008) ....................................................................................... 39

*Colorado Dep't of Human Servs. v. United States,*
  74 Fed. Cl. 339 (2006) .................................................................................. 19

*Cont'l Collection & Disposal, Inc., v. United States,*
  29 Fed. Cl. 644 (1993) .................................................................................. 37

*Cty. of L.A. v. Davis,*
  440 U.S. 625 (1979) ....................................................................................... 12

*CW Gov't Travel, Inc. v. United States,*
  46 Fed. Cl. 554 (2000) .................................................................................. 11

*Data Gen. Corp. v. Johnson,*
  78 F.3d 1556 (Fed. Cir. 1996) ...................................................................... 29

*De Funis v. Odegaard,*
  416 U.S. 312 (1974) ....................................................................................... 11

*Diamond v. Charles,*
  476 U.S. 54 (1986) ......................................................................................... 13

*Distributed Solutions v. United States,*
  539 F.3d 1340 (Fed. Cir. 2008) ......................................................... 17, 18, 19, 25

*Eagle Design & Mgmt. v. United States,*
  62 Fed. Cl. 106 (2004) .................................................................................. 22

*Emery Worldwide Airlines, Inc. v. United States,*
  264 F.3d 1071 (Fed. Cir. 2001) ............................................................... 15, 21

*EOD Tech., Inc. v. United States,*
  82 Fed. Cl. 12 (2008) .................................................................................... 24

*Erickson Air Crane Co. of Washington, Inc. v. United States,*
  731 F.2d 810 (Fed. Cir. 1984) ...................................................................... 20

*Fed. Crop Ins. Corp. v. Merrill,*
  332 U.S. 380 (1947) ....................................................................................... 38

*Galen Med. Assocs., Inc., v. United States*,
   369 F.3d 1324 (Fed. Cir. 2004) ............................................................................. 36

*Gentex Corp. v. United States*,
   61 Fed. Cl. 49 (2004) ............................................................................................. 40

*Glenn Defense Marine (Asia), PTE v. United States*,
   469 Fed. Appx. 865 (Fed. Cir. 2012) .................................................................... 13

*Gov't Tech. Servs., LLC v. United States*,
   90 Fed. Cl. 522 (2009) ........................................................................................... 20

*Hewlett-Packard v. United States*,
   41 Fed. Cl. 99 (1998) ............................................................................................. 15

*Ho v. United States*,
   49 Fed. Cl. 96, 107 (2001) ..................................................................................... 37

*Honeywell Int'l, Inc.* v. *Nuclear Regulatory Comm'n*,
   628 F.3d 568 (D.C. Cir. 2010) .............................................................................. 13

*HP Enterprises Servs., Inc. v. United States*,
   104 Fed. Cl. 230 (2012) ......................................................................................... 31

*Impresa Construzioni Geom. Domenico Garufi v. United States*,
   238 F.3d 1324 (Fed. Cir. 2004) ...................................................................... 21, 29

*Innovation Dev. Enters. of Am. v. United States*,
   114 Fed. Cl. 213 (2014) .................................................................................. 39, 40

*J. Cooper & Assocs., Inc., v. United States*,
   53 Fed. Cl. 8 (2002) ............................................................................................... 37

*J.C.N. Constr., Inc. v. United States*,
   No. 12-353C, 2013 WL 593479 (Fed. Cl. Feb. 15 2013) ..................................... 39

*Kalvar Corp. v. United States*,
   543 F.2d 1298 (Ct. Cl. 1976) .......................................................................... 36, 37

*Kellogg Brown & Root Servs., Inc. v. United States*,
   117 Fed. Cl. 764 (2014) ......................................................................................... 19

*Kentron Haw., Ltd. v. Warner*,
   480 F.2d 1166 (D.C. Cir. 1973) ............................................................................ 29

*Kingdomware Tech., Inc. v. United States*,
    136 S. Ct. 1969 (2016) ................................................................................. 13, 14

*Lawrence Battelle, Inc. v. United States*,
    117 Fed. Cl. 579 (2014) ....................................................................................... 27

*Lion Raisins, Inc. v. United States*,
    52 Fed. Cl. 629 (2002) ......................................................................................... 39

*Lions Raisins, Inc. v. United States*,
    416 F.3d 1356 (Fed. Cir. 2005) ........................................................................... 28

*Martinez v. United States*,
    333 F.3d 1295 (Fed. Cir. 2003) ........................................................................... 27

*McAfee, Inc. v. United States*,
    111 Fed. Cl. 696 (2013) ....................................................................................... 25

*MCI Telecommunications Corp. v. United States*,
    878 F.2d 362 (Fed. Cir. 1989) ............................................................................. 22

*McNutt v. Gen. Motors Acceptance Corp. of Ind.*,
    298 U.S. 178 (1936) ............................................................................................. 10

*MTB Grp., Inc. v. United States*,
    65 Fed. Cl. 516 (2005) ......................................................................................... 27

*N.Carolina v. Rice*,
    404 U.S. 244 (1971) ............................................................................................. 11

*Phoenix Scientific Corp.*,
    B-286817, 2001 CPD ¶ 24 n.4 (Comp. Gen. Feb. 22, 2001) ............................. 25

*PolyCon Corp*,
    B-218304, B-218305, 85-1 CPD ¶ 567 (Comp. Gen. May 17, 1985) ................ 22

*Powell v. McCormack*,
    395 U.S. 486 (1969) ............................................................................................. 12

*Public Utilities Comm'n of Cali. v. FERC*,
    236 F.3d 708 (D.C. Cir. 2001) ............................................................................. 12

*RAMCOR Services Group, Inc. v. United States*,
    185 F.3d 1286 (Fed. Cir. 1999) ..................................................................... 24, 25

*Reema Consulting Servs., Inc. v. United States*,
 107 Fed. Cl. 519 (2012) .................................................................................... 39, 40

*Resource Conservation Grp., LLC v. United States*,
 597 F.3d 1238 (Fed. Cir. 2010).................................................................. 18, 23, 26

*Reynolds v. Army & Air Force Exchange Serv.*,
 846 F.2d 746 (Fed. Cir. 1988).......................................................................... 10, 11

*Rotech Healthcare, Inc. v. United States*,
 71 Fed. Cl. 393 (2006) ............................................................................................. 4

*Scanwell Laboratories, Inc. v. Shaffer*,
 424 F.2d 859 (D.C. Cir. 1970) ............................................................................... 21

*Scheuer v. Rhodes*,
 416 U.S. 232 (1974)................................................................................................ 11

*Schooling v. United States*,
 63 Fed. Cl. 204 (2004) ........................................................................................... 11

*Size Appeal of GC Micro*,
 SBA No. 4365, 1999 WL 541522 (OHA July 1, 1999).......................................... 37

*Spencer v. Kemna*,
 523 U.S. 1 (1998).................................................................................................... 13

*Spezzaferro v. FAA*,
 807 F.2d 169 (Fed. Cir. 1986)................................................................................ 37

*Steel Co. v. Citizens for a Better Env't*,
 523 U.S. 83 (1998).................................................................................................. 10

*Supreme Foodservice GmbH v. United States*,
 109 Fed. Cl. 369 (2013) ......................................................................................... 24

*Sys. Application & Techs., Inc. v. United States*,
 691 F.3d 1374 (Fed. Cir. 2012).............................................................................. 18

*Sys. Div. v. United States*,
 27 Fed. Cl. 795 (1993) ........................................................................................... 11

*United States v. Johnson Controls*,
 713 F.2d 1541 (Fed. Cir. 1983).............................................................................. 20

vii

*United States v. Juvenile Male*,
    564 U.S. 932 (2011) ........................................................................................... 13

*URS Fed. Servs., Inc. v. United States*,
    102 Fed. Cl. 664 (2011) .................................................................................... 24

*US West Communications Services, Inc. v. United States*,
    940 F.2d 622 (Fed. Cir. 1991) .......................................................................... 16

*Validata Chem. Servs., Inc. v. United States*,
    No. CV 13-1882, 2016 WL 1048823 (Mar. 11, 2016) ............................... passim

*VFA, Inc. v. United States*,
    118 Fed. Cl. 735 (2014) .................................................................................... 19

*Wood Ivy Sys. Corp.*,
    B.203487, 81-1 CPD ¶ 491 (Comp. Gen. June 15, 1981) ............................... 18

*Zevalkink v. Brown*,
    102 F.3d 1236 (Fed. Cir. 1996) ........................................................................ 11

**Statutes**
5 U.S.C. § 701 ................................................................................................ 2, 7

5 U.S.C. § 706 ............................................................................................... 9, 28

28 U.S.C. § 1292 ............................................................................................... 14

28 U.S.C. § 1491 ........................................................................................ passim

31 U.S.C. § 3551 ............................................................................................... 21

31 U.S.C. § 6303 ............................................................................................... 18

41 U.S.C. § 111 ........................................................................................... 17, 18

41 U.S.C. § 3301 ............................................................................................... 18
41 U.S.C. § 403 ................................................................................................. 25

Administrative Dispute Resolution Act of 1996 (ADRA),
    Pub. L. No. 104-320, 110 Stat. 3870 .................................................................. 7

## Regulations

4 C.F.R. § 21.0 .......................................................................................... 22

13 C.F.R. § 121.1004 ......................................................................... 33, 34

13 C.F.R. § 121.101 ..................................................................................... 4

13 C.F.R. § 121.402 .............................................................................. 4, 29

13 C.F.R. § 121.504 ................................................................................... 36

13 C.F.R. § 134.302 ................................................................................... 30

13 C.F.R. § 134.304 .............................................................................. 6, 30

13 C.F.R. § 134.310 ................................................................................... 30

13 C.F.R. § 134.311 ................................................................................... 30

48 C.F.R. § 19.102 ..................................................................................... 4

48 C.F.R. § 19.301-1 ................................................................................. 34

48 C.F.R. § 19.302 ..................................................................................... 34

48 C.F.R. § 19.303 ....................................................................... 29, 30, 32

48 C.F.R. § 2.101 ....................................................................................... 18

48 C.F.R. § 31.205-18 ............................................................................... 39

Legislative History

142 Cong. Rec. S11848-01 (1996) ........................................................... 26

142 Cong. Rec. S26645 (1996) ................................................................. 26

## GLOSSARY

| | |
|---|---|
| Administrative Procedure Act…………………………………………… | APA |
| Administrative Record…………….…………………………………... | AR |
| Administrative Dispute Resolution Act of 1996………………………… | ADRA |
| Competition in Contracting Act………………………………………… | CICA |
| Federal Acquisition Regulation ………………………………………... | FAR |
| Government Accountability Office……………………………………… | GAO |
| North American Industrial Classification System……………………….. | NAICS |
| Office of Hearing and Appeals………………………………………….... | OHA |
| Portage, Inc.…………………………………………………………… | Portage |
| Small Business Administration………………………………………….. | SBA |
| System Award Management…………………………………………….. | SAM |
| URS\|CH2M Oak Ridge, LLC…………………………………………… | UCOR |
| Validata Chemical Services, LLC……………………………………… | Validata |

Pursuant to Rules 12(b)(1) and 52.1 of the Rules of the Court of Federal Claims (RCFC),

defendant, the United States respectfully submits this motion to dismiss, cross-motion for

judgment upon the administrative record and response to plaintiff Validata Chemical Services

Inc.'s (Validata) motion for judgment on the administrative record.

Validata sought to be a subcontractor to URS|CH2M Oak Ridge, LLC (UCOR), a

contractor with the Department of Energy (DOE) pursuant to DOE Contract No. DE-SC-

0004645.  The subcontract at issue in this case will expire on September 30, 2016, and UCOR is

currently re-procuring the services.  UCOR's new solicitation for the data validation services

subcontract contains North American Industrial Classification System (NAICS) 541960, the

NAICS code that Validata requests in this protest.[1]  Consequently, this case will be moot and

there is nothing left for this Court to resolve.  Alternatively, the complaint should be dismissed

because:  (1) a subcontract is not a procurement by a "Federal agency" for purposes of 28 U.S.C.

§ 1491(b)(1); and (2) precedent from the Federal Circuit establishes that subcontractors are not

"interested parties" with standing to bring a bid protest under 28 U.S.C. § 1491(b)(1).[2]

---

[1] UCOR recently posted instructions for Request for Proposal No. MR-16-038445, which
is the follow-on subcontract for Data Validation Services.  The entire solicitation is available on
UCOR's website at:  http://info.ettp.energy.gov/rfp/mr-16-038445/ (last visited Sept. 1, 2016).
We have attached the instructions, which specify that a proposal must meet the requirements as
stated in the qualification criteria, and we have also attached the qualification criteria which
identifies the applicable NAICS code for the procurement as NAICS code 541690, Other
Scientific and Technical Consulting Services, as Exhibit A.  In assessing whether the Court
possesses jurisdiction to determine a protest, the Court may "examine evidence and consider
documents outside the four corners of the pleadings."  *Int'l Fed'n of Prof. & Tec. Engineers v.
United States*, 111 Fed. Cl. 175, 179 (2013) (citing *Global Computer Enters., Inc. v. United
States*, 88 Fed. Cl. 350, 402 (2009)).

[2] Citations to the Administrative Record, filed in this matter on July 22, 2016, are
referenced as "AR__", citations to Validata's Motion for Judgment on the Administrative Record
are referenced as "Validata Br.", and the Amended Complaint in this matter is referenced as
"Am. Compl."

Even if the Court concludes that it does possess jurisdiction to entertain Validata's dispute with UCOR, a position with which we disagree, there is no merit to any of Validata's claims. Validata filed untimely protests of both the NAICS code assigned to the subcontract and whether the awardee, Portage, Inc. (Portage) met the applicable size standard. Accordingly, in the event the Court does not dismiss Validata's protest, the Court should deny Validata's motion and grant judgment in favor of the Government.

## QUESTIONS PRESENTED

1. Whether the Court possesses jurisdiction to decide Validata's protest because Validata is a subcontractor.

2. Whether the Court possesses jurisdiction to decide Validata's protest because the subcontract Validata is protesting will be completed as of September 30, 2016, and the work is currently being reprocured.

3. Whether the Court possesses jurisdiction to award Validata lost profits.

4. Whether the Court possesses jurisdiction to decide Count II of Validata's Amended Complaint because it concerns the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.* (APA).

5. Whether Validata filed a timely NAICS code appeal with the Small Business Administration (SBA) Office of Hearing and Appeals (OHA).

6. Whether Validata was prejudiced by the DOE's failure to forward Validata's untimely size protest to the SBA.

7. Whether Validata is entitled to bid preparation and proposal costs.

2

## STATEMENT OF FACTS

I.     **Nature Of The Case**

In this post-award protest by a subcontractor, Validata challenges UCOR's decision to assign a NAICS code of 562910, Environmental Remediation Services to a subcontract that UCOR awarded to Portage on September 18, 2012. UCOR is a prime contractor to DOE under Contract No. DE-SC-0004645. Validata also asserts that the subcontract should not have been awarded to Portage because Portage did not meet the 500-employee size standard that is applicable under that NAICS code.

II.    **Statement Of Facts**

A.    **UCOR's Solicitation And Award To Portage Of A Subcontract For Data Validation Services**

In 2011, DOE awarded a contract for environmental remediation services to UCOR. Under the terms of the contract, UCOR was authorized to enter into competitive firm-fixed price subcontracts up to $5 million and cost-type subcontracts up to $2 million without seeking approval from the DOE contracting officer. AR Tabs 4-10; Declaration of Heather Cloar (Cloar Decln.) at ¶¶ 3-4. This meant that UCOR was not required to seek the approval of DOE's contracting officer to prequalify bidders for solicitations or for fixed-price awards and cost-type awards up to these limits. *Id.*

In 2012, UCOR posted materials regarding pre-qualification requirements to its website and announced that it intended to issue a request for proposals for award of a subcontract for data validation services. AR Tab 12. The criteria advised that the solicitation would be open only to small businesses with fewer than 500 employees for data evaluation services and listed the applicable NAICS code as 562910, Environmental Remediation Services, with a size standard of

3

500 employees.  *Id.* at 674.[3]  Validata submitted the required pre-qualification materials to

UCOR in May 2012.  AR Tab 15.  UCOR subsequently issued the solicitation for the data

validation services in May 2012, but the solicitation did not contain a NAICS code.  AR Tab 17.

On August 13, 2012, a representative from Validata emailed UCOR's contracting officer and

asked "[w]hat are the NAICS code and size standard that should be used for this procurement?"

AR Tab 19 at 1331.  UCOR responded through questions and answers posted on its webpage that

"NAICS code is 562910 . . . [and] [s]ize standard is 500 employees."  *Id.* at 1315.  Although

Validata submitted a proposal, AR Tab 21, UCOR awarded the subcontract to Portage on

September 18, 2012, and informed other offerors of the award to Portage on that same day.  AR

Tab 26; AR Tab 27 at 1797.

> **B.**      **UCOR's Post-Award Correspondence With Validata**

Following the award of the subcontract, Validata emailed UCOR on September 19 and

October 1, 2012, expressing concern that Portage was not a small business.  AR Tab 27 at 1807-

08.  On October 2, 2012, Cindy Hart, UCOR's subcontract administrator responded that:  (1) she

had contacted Karen Reeve, UCOR's Small Business Program Manager and researched

Validata's concerns and was satisfied that Portage was a small business; and (2) if Validata

disagreed, it should submit a formal size protest to UCOR.  *Id.* at 1806.  UCOR's email files

indicate that on September 25, 2012:  (1) Portage contacted Ms. Reeve and stated that it had

fewer than 500 employees; and (2) that UCOR printed out data from the System Award

---

[3]  NAICS codes establish size standards to determine which entities qualify as small
businesses for preferences or eligibility under Government programs and procurements.
13 C.F.R. §§ 121.101, 121.402; 48 C.F.R. § 19.102.

Management (SAM) portal indicating that Portage was eligible to work on projects with the

NAICS code 562910. *Id.* at 1774; *see also* AR Tab 10 at 404.[4]

Validata sent UCOR's contracting officer a formal size protest on October 9, 2011, AR

Tab 10 at 383, and on October 11, 2012, Ms. Reeve responded and informed Validata that it

would have to file a formal size protest with the SBA. *Id.* Validata's size protest stated that it

did not believe Portage was a small business, and that a "complicating factor" to the size protest

was that there was no NAICS code in the solicitation but acknowledged that the issue was

"clarified in the Question and Answer stage." AR Tab 27 at 1785.

The October 11, 2012 email is the first instance in which an employee from DOE, here

Freda Hopper, the Small Business Program Manager, was informed of Validata's concerns.

AR Tab 10 at 383. Ms. Hopper was not a contracting officer, and her role as Small Business

Program Manager primarily involved reviewing UCOR's subcontracting plan, monitoring

UCOR's performance against goals in the plan, and encouraging small businesses to seek out

subcontracting opportunities. *See* Cloar Decln. at ¶ 4; AR Tab 10 at 380-82.

Validata responded that it would follow UCOR's instructions, noting that "we want to

make sure that we are not putting ourselves in any type of adversarial position relative to

UCOR." AR Tab 27 at 1798; *see also id.* at 1804.

On October 29, 2012, Validata again contacted UCOR stating that it had contacted the

SBA and that representatives from the SBA informed Validata that normally size protests are

submitted by either the prime contractor or the Federal agency issuing the prime contract, but

that Validata could also submit the documents directly to the SBA. *Id.* at 1811. Validata wrote

---

[4] SAM is an administrative system in which Federal contractors must register to make the business's availability known. SAM data includes counts of SAM registrants by industry and by size demographic characteristics. SAM is continually updated.

5

another letter to UCOR on November 6, 2012 stating, for the first time, that Validata believed

that the wrong NAICS code had been used.  *Id.* at 1813-1834.

On December 3, 2012, UCOR sent Validata a letter stating that it had considered

Validata's allegations and had concluded that:  (1) the subcontract contained the proper NAICS

code; and (2) Portage met the applicable size standard.  *Id.* at 1907.  UCOR's letter also stated

that it had consulted with DOE.  *Id.*  The email from UCOR transmitting the letter was the first

correspondence regarding Validata's concerns that copied Heather Cloar, the contracting officer

for DOE's contract with UCOR.  AR Tab 10 at 506-07; Cloar Decln. at ¶ 5.

### C.      UCOR's NAICS Code Appeal

In January 2013, over three months after UCOR awarded the subcontract, Validata filed a

NAICS code appeal to OHA.  AR Tab 11 at 595.  The appeal alleged that UCOR issued the

solicitation without a NAICS code or size standard and never amended the solicitation to

incorporate a NAICS code.  *Id.* at 595-96.  The SBA subsequently dismissed Validata's appeal in

a decision dated February 14, 2013, because:  (1) the appeal was moot as UCOR had already

awarded the contract, and OHA reasoned that even if it found in Validata's favor it had no

authority to order UCOR to reopen the competition or terminate the subcontract with Portage,

and (2) the appeal was untimely because under 13 C.F.R. § 134.304(b), a NAICS code appeal

must be filed within 10 calendar days after the issuance of a solicitation.  *Id.* at 543-46.

### D.      Validata's District Court Complaint

On November 27, 2013, nearly nine months after OHA issued a decision, Validata filed a

lawsuit in the United States District Court for the District of Columbia (district court).  Validata

subsequently filed an amended complaint on February 24, 2014, alleging that the DOE violated

the APA, 5 U.S.C. § 701, *et seq.* and other regulations when it: (1) approved UCOR's issuance

of the subcontract to Portage, despite alleged violations of the procurement process, and

(2) made its own size standard determination rather than referring the matter to the SBA. No.

CV 13-1882-RC, ECF No. 6 (D.D.C. Feb. 24, 2014). The complaint also alleged that OHA

violated the APA in dismissing Validata's NAICS code protest as moot. *Id.*

The Government filed a motion to dismiss or alternatively a motion for judgement on the

administrative record. No. CV 13-1882-RC, ECF No. 12 (D.D.C. May 19, 2014). In December

2015, the case was assigned to a new judge, who ordered briefing regarding whether Validata's

protest was covered by the Tucker Act, 28 U.S.C. § 1491(b)(1), as modified by the

Administrative Dispute Resolution Act of 1996 (ADRA), Pub. L. No. 104-320, 110 Stat. 3870,

which is codified at 28 U.S.C. § 1491(b), and therefore should be dismissed and transferred to

the Court of Federal Claims. No. CV 13-1882-RC, ECF No. 20 (D.D.C. Dec. 8, 2015). The

court also requested information regarding the status of the contract.

In January 2016, the Government filed the supplemental brief requested by the district

court explaining that the matter should not be transferred for several reasons. No. CV 13-1882-

RC, ECF No. 24 (D.D.C. Jan. 14, 2016). First, we explained that the matter should not be

transferred because it concerned a dispute between two private parties, which is not a

"procurement" by a "Federal agency" for purposes of the Tucker Act. *Id.* at 2-8. We also

explained that the case should not be transferred, and the plaintiff agreed, because, as a

subcontractor, Validata cannot be an "interested party" for purposes of the Tucker Act because it

is not an "actual or prospective bidder[] whose direct interest would be affected by the award of

the contract or the failure to award the contract." *See American Fed'n of Government Employees

v. United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2001) (*AFGE*). In addition, we informed the

7

district court that the contract with Portage and any related subcontracts was set to expire in

September 2016 and that there would be no further extensions.  No. CV 13-1882-RC, ECF No.

22 (D.D.C. Dec. 10, 2015).

Despite the parties' agreement that the case should not be transferred to the Court of

Federal Claims, on March 11, 2016, the district court issued an opinion ordering that the case be

transferred.  *Validata Chem. Servs., Inc. v. United States*, No. CV 13-1882, 2016 WL 1048823

(D.D.C. Mar. 11, 2016).  The opinion declined to follow years of Federal Circuit precedent

confirming that a subcontractor does not possess standing as an "interested party" for purposes of

the Court of Federal Claims' bid protest jurisdiction.  *Id.* at *8-14.  The opinion also concluded

that the complaint concerned a procurement by a Federal agency for purposes of the Tucker Act.

*Id.* at *14-16.

## SUMMARY OF THE ARGUMENT

This case should be dismissed as moot because the subcontract will be completed in 29

days, making it impossible for the Court to grant effectual relief, particularly when:  (1) a

competition for a new subcontract is ongoing; (2) the solicitation for the new subcontract

contains the NAICS code requested by Validata in this protest; and, as a result, (3) Validata, but

not Portage, will be eligible to compete for the subcontract.

In the alternative, the Court does not possess jurisdiction to decide Validata's protest

because it concerns a contract dispute between two private parties—Validata and UCOR—and

not a contract awarded by a "Federal agency" for purposes of 28 U.S.C. § 1491(b)(1).  What is

more, even if the subcontract could be considered a procurement for purposes of establishing

Tucker Act jurisdiction, *American Federation of Government Employees, AFL-CIO v. United*

*States*, 258 F.3d 1294 (Fed. Cir. 2001) (*AFGE*), establishes that a subcontractor cannot be an

8

"interested party" that possesses standing to bring a protest.  The Court also does not possess

jurisdiction under the Tucker Act to award lost profits, 28 U.S.C. § 1491(b)(2), nor does it

possess jurisdiction to decide Count II of Validata's Amended Complaint, which alleges

violations of the APA, 5 U.S.C. § 706.

If the Court reaches the merits of Validata's Amended Complaint, the Government is

entitled to judgment on the administrative record because Validata failed to establish that the

Government committed a prejudicial error.  With respect to Validata's NAICS code protest, the

record is clear that Validata filed an untimely protest that OHA reasonably dismissed.  Turning

to Validata's efforts to protest whether Portage met the applicable size standard, there is no merit

to Validata's claim that DOE performed its own size determination, rather than forwarding

Validata's untimely size protest to the SBA.   In addition, Validata has not established that the

contracting officer was required to file her own size protest because she had no reason

independently to question Portage's size.  Therefore, any protest that she would have forwarded

likely would have been rejected as untimely because it was not filed within the 5-day deadline

specified by 13 C.F.R. § 121.1004(a)(2)(i).  Moreover, evidence from a size determination filed

at around the same time Portage self-certified its size demonstrates that Portage met the 500-

employee size standard required under the applicable NAICS code, and so it is unlikely that the

SBA would have ruled in Validata's favor.

Similarly, to the extent Validata's Amended Complaint includes a claim for bad faith,

Validata cannot meet the high bar that is required to establish bad faith.  The administrative

record and the declaration from Ms. Cloar do not support that anyone from either UCOR or DOE

had any animus towards UCOR or any intent to harm the company.  To the contrary, the emails

contained in the record and Ms. Cloar's declaration demonstrate that DOE and UCOR were not

9

familiar with the procedures for handling a size protest concerning a subcontract. The parties

now understand the process and will be able to better handle these issues going forward, but

ignorance of this process is not tantamount to bad faith. Finally, Validata has not shown that it is

entitled to bid preparation and proposal costs.

Accordingly, we respectfully request that the Court either dismiss Validata's protest or

deny Validata's motion for judgment on the administrative record and grant judgment in favor of

the Government.

**ARGUMENT**

**I.      The Court Does Not Possess Jurisdiction To Entertain This Bid Protest Action And
         To Award The Relief Requested By the Plaintiff**

The Court should dismiss Validata's Amended Complaint because the subcontract with

Portage will be complete in 29 days, which will render Validata's claims moot. In addition, the

Court does not possess jurisdiction to entertain the claims raised in Validata's Amended

Complaint because: (1) the dispute in this protest concerns two private parties and not a "Federal

agency" for purposes of 28 U.S.C. § 1491(b)(1); (2) as a subcontractor Validata does not possess

standing as an "interested party"; (3) the Court cannot award lost profits; and (4) the Court

cannot decide claims brought under the APA.

**A.      Standard Of Review For A Motion To Dismiss For Lack Of Subject Matter
         Jurisdiction**

Jurisdiction is a threshold issue that the Court must address before examining the merits.

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) (citation omitted). The party

invoking the Court's jurisdiction "bears the burden of establishing subject matter jurisdiction by

a preponderance of the evidence," *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748

(Fed. Cir. 1988), and must present "competent proof" and demonstrate affirmatively that the

10

Court has jurisdiction. *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936). When considering a motion to dismiss for lack of subject-matter jurisdiction, the Court assumes the facts alleged in the complaint to be true. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). However, if a motion to dismiss challenges the jurisdictional facts alleged in the complaint, the Court may consider evidence beyond the pleadings to resolve the dispute. *Reynolds*, 846 F.2d at 748.

### B.    This Court Will Not Possess Jurisdiction To Decide This Case

Validata's protest will be moot because the subcontract in question will be fully-performed and no effectual relief will be available. It is well-established that justiciability, including mootness, is a question of subject-matter jurisdiction. *CW Gov't Travel, Inc. v. United States*, 46 Fed. Cl. 554, 556 (2000) (citing *N. Carolina v. Rice*, 404 U.S. 244, 246 (1971)). "The mootness doctrine originates from the 'case or controversy' requirement of Article III of the United States Constitution." *Northrop. Corp., Northrop Elecs. Sys. Div. v. United States*, 27 Fed. Cl. 795, 800 n.4 (1993) (citing *De Funis v. Odegaard*, 416 U.S. 312, 316 (1974)). Although the jurisdiction of this Court, as an Article I court is not limited by the "case or controversy" requirement of Article III, this Court and other Article I courts have adopted many justiciability precepts based upon prudential grounds. *See, e.g., Schooling v. United States*, 63 Fed. Cl. 204, 209 (2004) (dismissing case for lack of subject-matter jurisdiction because claims asserted in the complaint were moot); *CW Gov't Travel*, 46 Fed. Cl. at 558 (citing *Zevalkink v. Brown*, 102 F.3d 1236, 1243 (Fed. Cir. 1996)) (granting motion to dismiss for mootness); *see also Anderson v. United States*, 344 F.3d 1343, 1350 n.1 (Fed. Cir. 2003) ("The Court of Federal Claims, though an Article I court . . . applies the same standing requirements enforced by other federal courts created under Article III.").

The Supreme Court has stated that "a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Cnty of L.A. v. Davis*, 440 U.S. 625, 631 (1979) (citing *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). "[J]urisdiction, properly acquired, may abate if the case becomes moot because: (1) it can be said with assurance that 'there is no reasonable expectation . . .' that the alleged violation will recur . . . , and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Davis*, 440 U.S. at 631 (citations omitted). "Ordinarily, it would seem readily apparent that a challenge to an expired contract is moot, because the court could provide no relief to the allegedly aggrieved parties." *Public Utilities Comm'n of Cali. v. FERC*, 236 F.3d 708, 714 (D.C. Cir. 2001). This is particularly true in this case.

Validata's Amended Complaint asserts that UCOR assigned the incorrect NAICS code to the subcontract, and that the award to Portage was invalid because Portage did not meet the required size standard. As relief, Validata demands that the Court issue an order instructing: (1) UCOR to rescind the subcontract to Portage; (2) OHA to determine the proper NAICS code; and (3) OHA to apply the NAICS code urged by Validata. Am. Compl. at Request for Relief. Validata also demands lost profits and bid preparation and proposal costs. *Id.*

In this case, performance of the procured services will be complete by the time that the Court holds oral argument in this matter, and UCOR will award a new subcontract on October 1, 2016. As a result, Validata no longer has any personal stake in the outcome of this protest. The Court will not be able to enjoin further performance of these services because the services will have been fully performed. What is more, the Court will not be able to require UCOR to conduct a new solicitation or otherwise rescind the subcontract for any remaining term on the subcontract because there will no term remaining. And, a declaration that the award was unlawful would be

12

purely advisory, as the services are complete. Validata's challenge to this subcontract is therefore moot.

Validata also seeks lost profits and bid preparation and proposal costs. The Court, however, cannot award lost profits. What is more, the potential availability of bid preparation costs were Validata to succeed upon the merits does not prevent this suit from becoming moot. *See Glenn Defense Marine (Asia), PTE v. United States*, 469 Fed. Appx. 865, 867 (Fed. Cir. 2012) (unpublished); *see also Diamond v. Charles*, 476 U.S. 54, 70-71 (1986).

Validata also cannot show that this case fits within the exception for cases that are "capable of repetition, yet evading review." *Spencer* v. *Kemna*, 523 U.S. 1, 17 (1998); *see Honeywell Int'l, Inc.* v. *Nuclear Regulatory Comm'n,* 628 F.3d 568, 576 (D.C. Cir. 2010) ("The initial heavy burden of establishing mootness lies with the party asserting a case is moot," but it is "the opposing party [who] bears the burden of showing an exception applies."). This exception applies "only where '(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again.'" *United States v. Juvenile Male*, 564 U.S. 932, 938 (2011) (quoting *Spencer*, 523 U.S. at 17); *Kingdomware Tech., Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016). Here, UCOR has already resolicited the services using the NAICS code that Validata requests, and, based upon the size standard specified in the chosen NAICS code, Validata is eligible to compete for that subcontract but Portage is not.

Validata cannot show that the challenged action—UCOR's solicitation and award of orders to perform data validation services—is "in its duration too short to be fully litigated prior to cessation or expiration." *Juvenile Male*, 564 U.S. at 938. Although the Supreme Court recently held in *Kingdomware* that two years is "too short to complete review of the lawfulness

13

of a procurement," 136 S. Ct. at 1976, in this case, the challenged subcontract was in effect for four years.

In addition, despite the general two-year rule of thumb outlined in *Kingdomware*, a party may not assert that its claim evades review if its own conduct prevented full consideration of the claim, such as when an injunction or stay would preserve the issue for appellate review and the challenged action persists long enough that a litigant could obtain such interim relief.  Indeed, "every circuit to have considered the matter [has] conclude[d] that a litigant who could have but did not file for a stay to prevent a counter-party from taking any action that would moot his case may not, barring exceptional circumstances, later claim his case evaded review."  *Armstrong* v. *FAA*, 515 F.3d 1294, 1297 (D.C. Cir. 2008) (citing cases).

Here, Validata did not file an APA action in district court until November 27, 2013, which was *nine months* after OHA issued a decision on the NAICS code appeal.  *See Validata v. Dep't of Energy, et al.,* No. CV 13-1882-RC, ECF No. 1 (D.D.C. Feb. 24, 2014).  And, once Validata filed the action in district court, it failed to seek a preliminary injunction.  If Validata had sought a preliminary injunction, which would have required the district court to have addressed the issue of jurisdiction, that would have enabled Validata to appeal swiftly even if the district court denied that request.  *See* 28 U.S.C. § 1292(a)(1) (orders refusing injunctions are immediately appealable as a matter of right).  Likewise, if the issue had been appealed, Validata could have sought an injunction pending appeal.  Validata never sought such interim or expedited relief.  This case is accordingly moot because of Validata's own litigation choices and not because of anything inherent about the underlying private procurement.  Moreover, UCOR has already re-solicited the procurement with Validata's preferred NAICS code, and the

contracting officials at DOE and UCOR now understand how to process size protests concerning

subcontracts, so it is unlikely that this problem will arise again in the future.

      **C.**      **UCOR Is Not A "Federal Agency" Pursuant To 28 U.S.C. § 1491(b)(1) And Therefore Jurisdiction Cannot Be Established Under The Tucker Act**

      The Tucker Act, as amended by the ADRA, provides at 28 U.S.C. § 1491(b)(1) that the

Court of Federal Claims:

> [S]hall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a *Federal agency* for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.

(emphasis added).  The Tucker Act thus necessarily "limits this Court's bid protest jurisdiction to

a review of [Federal] agency decisions" and does not include procurement decisions made by

private parties such as agency contractors.  *Advance Constr. Servs., Inc. v. United States*, 51 Fed.

Cl. 362 , 364 (2002); *Bell BCI Co. v. United States*, 56 Fed. Cl. 465, 469 (2003) ("This court

clearly has no authority over non-Federal entities.") (quoting *Hewlett-Packard v. United States*,

41 Fed. Cl. 99, 103 (1998)).

      In *Blue Water Environmental, Inc. v. United States*, 60 Fed. Cl. 48, 51-52 (2004), the

Court of Federal Claims explained that the Tucker Act's definition of "agency" is controlled by

the definition contained in 28 U.S.C. § 451.  Under that definition, the term "agency" "includes

any department, independent establishment, commission, administration, authority, board or

bureau of the United States or any corporation in which the United States has a proprietary

interest, unless context shows that the term was to be used in a more limited sense."  *Id.; see also*

*Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1080 (Fed. Cir. 2001) (holding

that the definition of "agency" is controlled by the definition found in 28 U.S.C. § 451).

15

The Court in *Blue Water* concluded that it did not possess jurisdiction under the Tucker Act to decide a complaint filed by a subcontractor challenging the award of a subcontract by a prime contractor to the DOE. The Court explained that "to bring a protest in this court, the plaintiff must have competed on a government sponsored solicitation which was issued by a federal agency and not a private party. This Court has no authority over a non-Federal solicitation." *Blue Water*, 60 Fed. Cl. at 51.

In determining that it lacked jurisdiction to decide the protest, the *Blue Water* Court first considered the subcontractor's claim that, because DOE was allegedly responsible for the day-to-day supervision of the prime contractor, then the prime contractor should be considered an "agency" for purposes of the Tucker Act. *Id.* at 53. The Court rejected this theory based upon the grounds that DOE demonstrated it had no control over the subcontracting process. *Id.*

The *Blue Water* decision also examined whether the prime contractor could be considered an "agency" based upon the grounds that it acted as DOE's purchasing agent. 60 Fed. Cl. at 53. Applying the test found in *US West Communications Services, Inc. v. United States*, 940 F.2d 622, 629 (Fed. Cir. 1991)—which held that an agency relationship may be established if: (1) the prime contractor acted as a purchasing agent for the Government; (2) the agency relationship between the prime contractor and the Government was established by clear contractor consent; and (3) the contract stated that the Government would be directly liable for the purchase price—the *Blue Water* court concluded that there was "no evidence" to support a finding that the prime contractor was DOE's purchasing agent. 60 Fed. Cl. at 53 (citations omitted).

UCOR was authorized to enter into competitive firm fixed-price subcontracts with private subcontractors without seeking the DOE's consent. AR Tabs 4-10; Cloar Decl. at ¶ 3. UCOR did not submit its pre-qualification criteria, its solicitation, or its award documentation to

16

the DOE for consent, nor was it required to do so.  AR Tab 24 at 1558.  And, as Ms. Cloar

explains in her declaration, she did not review or consent to the prequalification criteria, the

solicitation or the award documentation.  Cloar Decln. at ¶ 3.  Accordingly, because UCOR is

not a Federal agency, the Court of Federal Claims does not possess jurisdiction to decide

Validata's Amended Complaint.  *Blue Water*, 60 Fed. Cl. at 53-54.

  The district court disagreed with our position that UCOR's award of a subcontract to

Portage was not a Federal procurement for purposes of the Tucker Act, based upon:  (1) an

overbroad reading of the definition of a "procurement" from *Distributed Solutions v. United

States*, 539 F.3d 1340 (Fed. Cir. 2008), and (2) the erroneous conclusion that every alleged post-

award violation of a statute in connection with a procurement can be a bid protest.  *Validata*,

2016 WL 1048823, at \*14-15.

  In *Distributed Solutions* the Federal Circuit adopted a broad definition of the term

"procurement" found in 41 U.S.C. § 111.  539 F.3d at 1345-46.  Despite adopting that broad

definition, *Distributed Solutions* clarified that not every Government action that fits within that

literal definition is a bid protest pursuant to 28 U.S.C. § 1491(b)(1).  *Distributed Solutions*, 539

F.3d at 1346 (noting that "adding work to an existing contract that is clearly within the scope of

the contract does not raise a viable protest under § 1491(b)(1)").  The facts of *Distributed

Solutions* —in which the Government initially sought to procure software from an outside

vendor and issued a Request for Information, only to ultimately allow an existing prime

contractor to select the software vendor—demonstrate that the relevant issue was how the

*Government* would determine a need for and contract for services, not as here, whether a

contractor, who was fully authorized to issue subcontracts without the Government's consent,

followed proper procedures.

17

There are several reasons why the broad definition of a "procurement or proposed procurement" as analyzed in *Distributed Solutions* does not establish that the Court of Federal Claims possesses jurisdiction to decide all bid protests filed by subcontractors as is the case here. First, the definition of "procurement" adopted by the Federal Circuit does not include subcontracts, or contracts between two private parties. As we explained above, in *Distributed Solutions*, the Federal Circuit evaluated the term "procurement" in the context of a Federal agency's decision to acquire property or services. *See Res. Conservation Grp., LLC v. United States*, 597 F.3d 1238, 1243-1245 (Fed. Cir. 2010) (evaluating whether a Federal agency's lease of property constituted a procurement); *Sys. Application & Techs., Inc. v. United States*, 691 F.3d 1374, 1380-82 (Fed. Cir. 2012) (evaluating whether Federal agency's decision to take corrective action amounted to a procurement). Notably, Federal Acquisition Regulation (FAR), 48 C.F.R. § 2.101(b), specifically defines a "procurement" as an "acquisition," or "acquiring by contract with appropriated funds or supplies or services . . . *by and for the use of the Federal Government* through purchase or lease." *Id.* (emphasis added). Similarly, in the Competition in Contracting Act (CICA), 41 U.S.C. § 3301(a), which incorporates the same definition of "procurement" from 41 U.S.C. § 111, expressly limits its coverage to procurements conducted by Federal agencies.[5] Similarly, the Federal Grants and Cooperative Agreement Act of 1978, 31 U.S.C.

---

[5] Notably, the Government Accountability Office (GAO) generally will not decide bid protests brought by subcontractors unless one of the following circumstances are met: (1) the prime contractor is acting as a purchasing agent of the Government; (2) the Government's active or direct participation in the selection of a subcontractor has the effect of rejecting or selecting a potential subcontractor or significantly limiting subcontract sources; (3) fraud or bad faith is shown in the Government's approval of the subcontract or proposed award; (4) the subcontract is determined to be "for" an agency of the Government; or (5) the questions concerning the award of subcontracts are submitted by Federal officials who are entitled to advance decisions from the Office. *Wood Ivy Sys. Corp.*, B.203487, 81-1 CPD ¶ 491, at *1 (Comp. Gen. June 15, 1981).

18

§ 6303, also defines a procurement as being one between a Federal agency and a state private entity.

Second, as the Court of Federal Claims has recognized in other cases, there are limitations on the broad definition of a procurement found in *Distributed Solutions*. For example, in *VFA, Inc. v. United States*, 118 Fed. Cl. 735 (2014), the Court held that the Government's decision to use its own software was not part of the Federal procurement process and therefore jurisdiction was not proper under the Tucker Act. The Court of Federal Claims has also expressed skepticism of adopting an overbroad reading of the term "procurement" or of *Distributed Solutions*, particularly when the impact of that decision would result in excessive judicial interference with agency decision-making. *E.g.*, *Colorado Dep't of Human Servs. v. United States*, 74 Fed. Cl. 339 (2006). The district court's decision did not address any of these arguments in its opinion.

The district court also did not consider the consequences of subjecting Federal agencies to post-award bid protests from a subcontractor long after the prime contract was awarded. Here, the district court reasoned, and Validata also contends in its brief, that because DOE's contract with UCOR required UCOR to submit a small business plan, Validata Br. at 6, bid protests can be filed against the Government and a contractor could seek bid preparation and proposal costs *years* after the Government has awarded a prime contract. Yet, this is plainly not how this Court has interpreted the Court's bid protest jurisdiction. Notably, this Court has expressly declined to entertain bid protests concerning matters of contract administration filed after the contract was awarded even when the plaintiff has alleged that an action of the Government violates a statute or regulation. *See Kellogg Brown & Root Servs., Inc. v. United States*, 117 Fed. Cl. 764, 769 (2014) (holding that matters of contract administration do not fall within the Court's bid protest

19

jurisdiction); *see also Gov't Tech. Servs., LLC v. United States*, 90 Fed. Cl. 522, 526-27 (2009)

(holding that the Court does not possess jurisdiction to decide matters concerning contract

administration).  And, to the extent that Validata claims there is an inherent unfairness to its

inability to obtain judicial review on matters concerning the administration of a prime contract,

that has long been the law under the Contract Disputes Act.  *E.g.*, *United States v. Johnson

Controls*, 713 F.2d 1541 (Fed. Cir. 1983) (holding that a subcontractor is not a contractor within

the meaning of the CDA); *Erickson Air Crane Co. of Washington, Inc. v. United States*, 731 F.2d

810, 813 (Fed. Cir. 1984).

Consequently, DOE did not determine a need for services or otherwise participate in the

evaluation process.  Declaring the award of a subcontract to be a "procurement" by a "Federal

agency" that can be protested under the Tucker Act under these circumstances would

impermissibly expand the scope of the Tucker Act jurisdiction.  Indeed, it could open the doors

to any number of protests by subcontractors over which a Federal agency plainly has no control.

Accordingly, this Court should not conclude that UCOR's decision to award a subcontract to

Portage falls within Tucker Act jurisdiction.

**D.**      **Validata Is Not An "Interested Party" With Standing To Bring A Bid Protest**

Under the Tucker Act, the Court of Federal Claims possesses exclusive jurisdiction to

decide an action by an "interested party" objecting to:  (1) "a solicitation by a Federal agency for

bids or proposals for a proposed contract"; (2) "a proposed award or the award of a contract"; or

(3) "any alleged violation of statute or regulation in connection with a procurement or a proposed

procurement."  28 U.S.C. § 1491(b)(1).  Here, *AFGE*, 258 F.3d at 1299, establishes that Validata

is not an interested party eligible to litigate a protest.

20

Prior to the enactment of ADRA, bid protests were decided both in district courts and in the Court of Federal Claims. *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1331-32 (Fed. Cir. 2004) (explaining the history of judicial review of bid protests). Specifically, bid protests that were filed prior to the award of a contract were decided by the Court of Federal Claims, and bid protests that were brought after the contract was awarded were decided in district courts under the APA. *Id.* Jurisdiction in the district courts was referred to as "Scanwell jurisdiction" based upon the decision in *Scanwell Laboratories, Inc. v. Shaffer*, 424 F.2d 859 (D.C. Cir. 1970). As explained in *Impresa*, the concurrent jurisdiction "led to litigants being given the opportunity to select between the different district courts, as well as the Court of Federal Claims . . . and resulted in a general lack of uniformity in bid protest law." 238 F.3d at 1332. The congressional intent behind the ADRA, therefore, "was to vest a single judicial tribunal [the CFC] with exclusive jurisdiction to review government contract protest actions." *Emery Worldwide*, 264 F.3d at 1079.

ADRA does not define the term "interested party." In *AFGE*, the Federal Circuit carefully considered the statute's legislative history and concluded that Congress intended to adopt the narrower definition of the term "interested party" found in the Competition in Contracting Act (CICA), 31 U.S.C. § 3551, rather than broader test for standing found in the APA. 258 F.3d at 1302. Specifically, the *AFGE* court stated that "[w]e . . . are not convinced that Congress, when using the term 'interested party' to define those who can bring suit under § 1491(b)(1) intended to confer standing on anyone who might have standing under the APA." *Id.* As a result, the *AFGE* court held that it construed the term "interested party" to be limited to "actual or prospective bidders whose direct economic interest would be affected by the award of the contract or the failure to award the contract." *Id.* (quoting 31 U.S.C. § 3551(2)).

21

Since the time that *AFGE* was decided, this Court and the Federal Circuit have held that

the *AFGE* definition does not include subcontractors. *E.g. Eagle Design & Mgmt. v. United*

*States*, 62 Fed. Cl. 106 (2004) ("Our appellate authority has squarely rejected the notion that a

subcontractor qualifies as an 'interested party' under the CICA definition.") (citing *MCI*

*Telecommunications Corp. v. United States*, 878 F.2d 362, 365 (Fed. Cir. 1989)). The GAO has

been equally clear that it does not possess jurisdiction to entertain protests brought by

subcontractors pursuant to CICA. *See* 4 C.F.R. § 21.0(a) ("Interested party means an actual or

prospective bidder or offeror whose direct economic interest would be affected by the award of a

contract of by the failure to award a contract."); *PolyCon Corp*, B-218304, B-218305, 85-1 CPD

¶ 567, at *1 (Comp. Gen. May 17, 1985) (explaining that although prior to the enactment of

CICA some contractors were permitted to bring protests, post-CICA the GAO would "no longer

consider subcontractor protests except where the subcontract is by or for the government").

Although before the district court both the Government and Validata agreed that Validata

cannot be an interested party for purposes of ADRA, the district court disagreed and held that the

*AFGE* interested party test applies only to protests concerning prongs one and two of the Tucker

Act, and not to "prong three" protests or those that allege a "violation of a statute or regulation in

connection with a procurement or proposed procurement." 28 U.S.C. § 1491(b)(1); *Validata*,

2016 WL 1048823, at *9-10. The district court's holding is inconsistent with *AFGE*'s holding

which established *one* "interested party" test for all bid protests and with other precedent from

the Federal Circuit and this Court.

The district court's conclusion that the Tucker Act can be divided into separate "prongs,"

with the *AFGE* "interested party" test for standing applying to the first two "prongs," and a

different test applying to the "third prong," based upon the fact that the "third prong" contains

22

the language "in connection with a procurement or proposed procurement," is contrary to the

Federal Circuit's decision in *Resource Conservation Group*, 597 F.3d at 1245, and to this

Court's decision in *Alaska Central Express, Inc. v. United States*, 50 Fed. Cl. 510 (2001).

In *Resource Conservation Group*, the Federal Circuit held that the "in connection with a

procurement" language in 1491(b)(1) applies to all three "prongs," not just the "third prong."

*Res. Conservation*, 597 F.3d at 1245.  The district court's conclusion that the CICA definition of

"interested party" applies only to the first two prongs is thus logically inconsistent with *Resource*

*Conservation Group*, which essentially states that the three prongs should be understood

together, rather than separately.

Similarly, in *Alaska Central Express,* the Court declined to adopt the more expansive

definition of an "interested party" from the APA in "prong three" protests and concluded that it

could not do so based upon the binding precedent from *AFGE*.  The *Alaska Central* decision

noted that, prior to the *AFGE* decision there was a split of authority in the Court of Federal

Claims regarding whether to interpret the term "interested party" in accordance with the

definition in CICA or the definition from the APA, but that the holding in *AFGE* resolved that

question for all bid protests.  50 Fed. Cl. at 514-15.  The Court further explained that the

argument that the APA test for standing should be applicable in "prong three" protests amounted

to a contention that "the Federal Circuit did not mean what it said in *AFGE* [when it adopted the

CICA definition of "interested party.]"  *Id.* at 517.  Citing to the Federal Circuit's reasoning in

*AFGE*, the Court held that *AFGE* "implicitly rejected the argument . . . that the ADRA's use of

the word 'procurement' separately from 'solicitation' and 'contract' requires an equally

expansive definition of 'interested party.'"  *Id.* at 518.  Although the facts in *Alaska Central* are

distinguishable from this case, the Court's core holding that *AFGE*'s test applies to all three "prongs" fully applies here.

The *Alaska Central* decision further held that the protestor's case there was not assisted by the Federal Circuit's statement in *AFGE* that "[it is the intention of the [ADRA] to give the Court of Federal Claims exclusive jurisdiction over the full range of procurement protest cases previously subject to judicial review in the federal district courts and the Court of Federal Claims]" which is language that the district court relied heavily upon in its decision. *Id.* (citing *AFGE*, 258 F.3d at 1300) (alterations in original)); *Validata*, 2016 WL 1048823, at *11-12. The *Alaska Central* decision also concluded that *AFGE* panel clearly understood that "Scanwell" jurisdiction was limited to "'bid protest cases brought under the APA by *disappointed bidders*.'" *Alaska Central*, 50 Fed. Cl. at 518 (quoting *AFGE*, 258 F.3d at 1301).

Notably, this Court has applied the same *AFGE* "interested party" test in other bid protests that concern "prong three" protests, such as protests challenging an override of the mandatory CICA stay when a protest is filed at the GAO, based upon the decision in *RAMCOR Services Group, Inc. v. United States*, 185 F.3d 1286 (Fed. Cir. 1999). *E.g.*, *EOD Tech. Inc. v. United States*, 82 Fed. Cl. 12 (2008) (applying the definition of "interested party" from *AFGE* to protest regarding the override of a CICA stay); *URS Fed. Servs., Inc. v. United States*, 102 Fed. Cl. 664, 669 (2011) (same); *Supreme Foodservice GmbH v. United States*, 109 Fed. Cl. 369, 381 (2013) (same). Similarly, in *Alaska Central*, the Court rejected the protestor's contention that the *RAMCOR* decision supported a more expansive definition of "interested party" in "prong three" protests. 50 Fed. Cl. at 518. There, the Court explained that the plaintiff in *RAMCOR* was an incumbent contractor whose proposal had been rejected and thus fit within the traditional

24

definition of "interested party" applied in other protest cases.  *Id.* (citing *RAMCOR*, 185 F.3d at 1289).

And, in bid protests alleging that a particular Federal agency action has impermissibly restricted competition in violation of a statute or regulation, the Court and the GAO have assessed standing based upon the protestor's demonstration that it would participate in a future competition as an *offeror* and not as a mere subcontractor.  *E.g.*, *McAfee, Inc. v. United States*, 111 Fed. Cl. 696, 708-09 (2013) (concluding that a party possessed standing because it demonstrated that it would bid as an offeror on a solicitation that did not impermissibly restrict competition and not as a subcontractor); *Phoenix Scientific Corp.*, B-286817, 2001 CPD ¶ 24, at *3 n.4 (Comp. Gen. Feb. 22, 2001) (same).

The district court also included a lengthy section stating its opinion that *AFGE* was wrongly decided and should not dictate the outcome in this case.  *Validata*, 2016 WL 1048823, at 9-13.  This portion of the district court's opinion constitutes nothing more than the district court's disagreement with the careful analysis of ADRA's legislative history that is contained in *AFGE*.  *Id.*

Specifically, the district court expressed concern regarding the absence of definitive legislative intent to apply the definition from CICA to ADRA, particularly to "prong three" protests.  *Id*.  The Federal Circuit has not required such a definitive expression of legislative intent in other circumstances.  For example, in *Distributed Solutions*, the Court applied a definition of "procurement" from 41 U.S.C. § 403(2) because the other statute "give[s] overall direction for federal procurement policies, regulations, procedures, and forms."  *Distributed Solutions*, 539 F.3d 1345.

25

Moreover, although the district court disagreed with the holding in *AFGE* that it was appropriate to adopt the CICA definition based upon its conclusion that "waivers of sovereign immunity . . . should be construed narrowly," *Validata*, 2016 WL 1048823, at \*11-12, the *AFGE* decision cited legislative history that supports that Congress understood *Scanwell* jurisdiction to apply to challenges brought by *contractors*. *AFGE*, 258 F.3d at 1301 (citing 142 Cong. Rec. S11848-01); *Validata*, 2016 WL 1048823, at \*12. The district court's opinion also ignores the other portions of the floor debate that further support the holding in *AFGE*. For example, during the floor debate Senator Levin used the term "procurement protests" to describe the jurisdiction of the GAO, suggesting that he did not meaningfully distinguish between protests filed in Federal courts and protests filed at GAO. *Id.*; 142 Cong. Rec. S26645 (1996) (statement of Sen. Cohen) (explaining *Scanwell* jurisdiction as one that permitted a "contractor [to] challenge a Federal contract award"); *see also Alaska Central*, 50 Fed. Cl. at 518 n.6 (noting the "unreliability of floor statements as instructive legislative history").

Consequently, despite the district court's disagreement, the decision in *AFGE* requires dismissal of Validata's complaint for lack of standing.

### E.    The Court Does Not Possess Jurisdiction To Award Lost Profits

Validata's Amended Complaint alleges that it seeks "lost profits in the amount of approximately \$155,030.40." Am. Compl. at Request for Relief, ¶ e. This Court however, cannot award lost profits. As explained in the paragraphs below, we dispute that Validata is entitled to any relief whatsoever, but, regardless, in a bid protest action, "any monetary relief shall be limited to bid preparation and proposal costs." 28 U.S.C. § 1491(b)(2).

Accordingly, this Court cannot award the "lost profits" sought in the Amended Complaint.

26

## F.     **This Court Does Not Possess Jurisdiction To Decide Claims Under The APA**

The Court should also dismiss Count II of the Amended Complaint which alleges that the Government has violated the APA, because the Court does not possess jurisdiction to review claims under the APA.

In bid protests, the Court applies the standard or review set forth in the APA. 28 U.S.C. § 1491(b)(4); *see also MTB Grp., Inc. v. United States*, 65 Fed. Cl. 516, 521 (2005). When the Court decides bid protests pursuant to this standard it is "merely is exercising jurisdiction using the APA standard of review; it is not reviewing agency action under the APA." *MTB Group*, 65 Fed. Cl. at 521 (citing *Banknote Corp of Am. v. United States*, 365 F.3d 1345, 1350 (Fed. Cir. 2004). Indeed, the Court has held that "[i]t is well-settled that this court does not have jurisdiction to hear cases under the APA. *Lawrence Battelle, Inc. v. United States*, 117 Fed. Cl. 579, 585 (2014) (citing *Martinez v. United States*, 333 F.3d 1295, 1313 (Fed. Cir. 2003) (en banc); *see also Century Expl. New Orleans, LLC v. United States*, 110 Fed. Cl. 148, 173 (2013) ("There is no question that this court is without subject matter jurisdiction over claims under the APA."); *Lions Raisins, Inc. v. United States*, 416 F.3d 1356, 1370 n.11 (Fed. Cir. 2005) ("Of course, no APA review is available in the Court of Federal Claims.").

Accordingly, Count II of Validata's Amended Complaint should be dismissed.

## II.     **Validata's Claims Fail On The Merits**

In the event the Court determines that the Court possesses jurisdiction to entertain Validata's bid protest, the Court should rule in favor of the Government. OHA correctly dismissed Validata's untimely NAICS code protest that was filed nearly two months after UCOR awarded the subcontract to Portage. In addition, there is no merit to Validata's claims that:

27

(1) the DOE contracting officer performed her own size determination; or (2) the DOE

contracting officer was required to file her own bid protest. Even if Validata's untimely size

protest had been forwarded to the SBA, it would most likely have been dismissed as untimely,

or, it would have failed on the merits because contemporaneous evidence demonstrates that in

2012 Portage was determined by the SBA to have met the applicable size standard under the

chosen NAICS code. Consequently, to the extent anyone at UCOR incorrectly processed

Validata's size protest, Validata was not prejudiced by that error.

### A.    Standard Of Review For A Motion For Judgment On The Administrative Record

Under the ADRA, this Court reviews the legality of an agency's decision in accordance

with the standards set forth in the APA, 5 U.S.C. § 706 (2000); *Advanced Data Concepts, Inc. v.*

*United States*, 216 F.3d 1054, 1057 (Fed. Cir. 2000). Although section 706 of the APA

incorporates several standards, the "proper standard to be applied in bid protest cases" is

contained within section 706(2)(A), which provides that agency decisions may be set aside only

if the agency's action was "arbitrary, capricious or otherwise not in accordance with the law."

28 U.S.C. § 1491(b)(4) (incorporating by reference 5 U.S.C. § 706(2)(A)); *see Bannum, Inc. v.*

*United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005). In resolving a motion for judgment upon

the administrative record, this Court resolves issues of law and decides all necessary issues of

fact based upon the administrative record created before the agency. *Bannum*, 404 F.3d at 1355-

56.

When a protestor asserts a violation of regulation or procedure, "the disappointed bidder

must show 'a clear and prejudicial violation of applicable statutes or regulations.'" *Impresa*, 238

F.3d at 1333 (quoting *Kentron Haw., Ltd. v. Warner*, 480 F.2d 1166, 1169 (D.C. Cir. 1973)).

"[T]o establish prejudice, a protester must show that, had it not been for the alleged error in the

procurement process, there was a reasonable likelihood that the protester would have been

awarded the contract." *Data Gen. Corp. v. Johnson,* 78 F.3d 1556, 1562 (Fed. Cir. 1996); *see*

*also Bannum, Inc.*, 404 F.3d at 1353, 1358.

### B.     Validata Failed To File A Timely NAICS Code Protest

OHA acted reasonably in dismissing Validata's NAICS code protest which was filed

nearly two months after UCOR awarded the subcontract to Portage.

### 1.     Statutory And Regulatory Background For NAICS Code Protests

Under Federal regulations, the contracting officer selects a NAICS code and that

determination is final unless timely appealed to SBA-OHA.  13 C.F.R. §121.402(c); *see also*

*Advanced Sys. Techn., Inc.*, 69 Fed. Cl. at 476.  The SBA is also vested with additional authority

pertaining to the selection of a NAICS code for a solicitation. "An unclear, incomplete or

missing NAICS code designation or size standard in the solicitation may be clarified, completed

or supplied by SBA in connection with a formal size determination or size appeal." *Id.*

To be considered timely, a NAICS code protest must be filed within 10 calendar days

after issuance of the solicitation or amendment to the solicitation affecting the NAICS code or

size standard. *Id.* § 134.304(b); 48 C.F.R. § 19.303(c)(1).  Any party adversely affected by a

NAICS code selection may file an appeal with SBA-OHA.  13 C.F.R. § 134.302.  Likewise, "any

intervenor, or any person with a general interest in an issue raised by the appeal may file and

serve a response supporting or opposing the appeal." *Id.* § 134.309.  The contracting officer

may, but is not required to, respond to the appeal by submitting argument and evidence.

48 C.F.R. § 19.303(c)(4).

The standard of review employed by SBA-OHA is whether there was a clear error of fact

or law in the selection of the NAICS code. *Id.* § 134.314.  The burden of proof rests with the

appellant.  *Id.*  An SBA-OHA administrative law judge is required to issue a written decision with findings of facts and conclusions of law, along with an explanation of the reasoning and the relief ordered.  *Id.* § 134.316(c).  Once issued, a NAICS code decision is the final decision of the SBA and may not be reconsidered.

2.    **OHA Correctly Dismissed Validata's NAICS Code Protest Because Validata's Protest Was Untimely And Validata Was On Notice Regarding The Applicable NAICS Code**

OHA correctly dismissed Validata's untimely NAICS code protest.  AR Tab 11 at 545-46.  Validata did not file a NAICS code protest until two months after the subcontract was awarded, which is plainly far outside the 10-day deadline.  13 C.F.R. § 134.304(b); 48 C.F.R. § 19.303(c)(1); AR Tab 11 at 545-46.  In addition, SBA regulations provide that untimely NAICS code protests must be dismissed.  13 C.F.R. § 134.304(c); 48 C.F.R. § 19.303(c)(1).

Validata's failure to file a timely NAICS code appeal cannot be excused in this case.  As noted in OHA's decision, the pre-qualification criteria specified the applicable NAICS code.  AR Tab 12 at 672; AR Tab 11 at 546.  Validata's pre-qualification submission also contained pages referencing the chosen NAICS code.  AR Tab 15 at 833.  And, although the solicitation did not contain a NAICS code, Validata was aware of that omission on August 13, 2012, and asked the UCOR contracting officer "[w]hat are the NAICS code and size standard that should be used for the project."  AR Tab 19 at 1331.  UCOR answered that question two days later by posting an answer to the question on its website stating that the NAICS code was 562910 and that the size standard was 500 employees.  *Id.* at 1315.  This clarification alone should have been sufficient to put UCOR on notice that it needed to file a protest with OHA if it disagreed with the NAICS code.  Validata, however, failed to take any action until two months after UCOR awarded the subcontract.

Even the primary authority that Validata cites in its brief, *NAICS Appeal of King's Thrones, LLC*, SBA No. NAICS-4845 (OHA April 18, 2007), does not excuse Validata's substantial delay in filing a NAICS code protest.  Validata Br. at 23-24.  In *King's Thrones*, the solicitation did not designate a NAICS code, and the protestor contacted the contracting officer to inquire about the NAICS code.  *Id.* at *2.  Once the contracting officer identified the applicable NAICS code in an email, the offeror *immediately* filed a protest with OHA.  *Id.* Unlike the protestor in *King's Thrones*, however, Validata waited until November 5, 2012— three months after UCOR answered Validata's question regarding the applicable NAICS code, and two months after it was informed that Portage was the awardee—before it informed UCOR that it believed that the wrong NAICS code was used for the services.  AR Tab 10 at 410. Moreover, in *King's Thrones* offerors had no way of knowing what the NAICS code was for the procurement, but, in this case, UCOR did specify a NAICS code both in the pre-qualification criteria and the posted questions and answers.  AR Tab 11 at 546.

As we have explained above, all of this is immaterial because UCOR has issued a new solicitation for a subcontract for data validation services using the NAICS code that Validata sought in its NAICS code appeal.  *See* Exh. A.  As a result, Validata has received all of the relief that could have been obtained even if OHA had decided its untimely protest.  This is because even if a party files a timely NAICS code protest it is not guaranteed any relief for the protested solicitation.  The FAR provides at 48 C.F.R. § 19.303(8) that if OHA's decision is received by the contracting officer for a procurement before the date offers are due "the decision shall be final and the solicitation must be amended."  An OHA decision received *after* the due date for initial offers, however, does not apply to the pending solicitation but applies for "*future* solicitations of the same products or services" if it is considered "appropriate."  *Id.* (emphasis

added). Given the late date of Validata's protest, the most it could have received was a promise that the parties would use Validata's proposed NAICS code going forward, *which is exactly what has happened*.

Accordingly, if the Court does not dismiss Validata's NAICS code protest for lack of jurisdiction, the Court should uphold OHA's decision dismissing Validata's protest.

      C.    **There Is No Merit To Validata's Untimely Size Protest**

Validata did not file a timely size protest. Applicable SBA regulations would have required Validata to file a size protest within five days of learning of the award to Portage, which, here, would have been September 23, 2012. Apparently aware that it did not file a timely size protest Validata seeks to excuse its failure by erroneously contending that: (1) DOE performed its own size standard determination; and (2) that DOE's contracting officer was required to file *her own* size protest merely because Validata challenged Portage's size. Validata Br. at 16, 21. All of this is immaterial, however, because an SBA size protest decision dated May 22, 2013, demonstrates that Validata was not prejudiced by the conflicting information it received regarding how to file a size protest because Portage met the applicable 500-employee size standard.

Contrary to Validata's assertions in its brief, there is no evidence in the record that DOE performed its own size determination. Validata's statement that "DOE made its own size determination of the subcontract awardee in direct violation of the applicable regulations," Validata Br. at 16, is based solely upon a statement in a letter from Vincent Marivelett, UCOR's Manager of Subcontracts, Procurement and Property to Ms. Harmon. *Id.* at 16 (citing AR Tab 11 at 660). Mr. Marivelett's letter states only that UCOR had discussed the matter with DOE and that "*UCOR has verified that the current subcontractor meets the size requirement . . . for award*

32

*of this subcontract*." AR Tab 11 at 660 (emphasis added). The letter and the record do not demonstrate that anyone from DOE ever analyzed whether Portage met the applicable size standard. Moreover, Ms. Cloar's declaration specifically states that she did not perform a size determination and that she does not believe that Ms. Hopper ever performed such a determination, particularly since that would not fall within her job as Small Business Program Manager. Cloar Decln. at ¶ 4.

Validata's contention that "the DOE Contracting Officer should have submitted the size protest to the applicable SBA Area Office, because the time limitations which apply to protestors do not apply to contracting officers" only further demonstrates Validata's confusion regarding the SBA regulations. Validata Br. at 16 (citing 13 C.F.R. § 121.1004(b)). Validata's argument conflates a *contracting officer's* protest, which is not subject to the SBA time limits, with the contracting officer's obligation to forward untimely protests filed by an interested party. Validata Br. at 16. Here, even if the DOE contracting officer had forwarded Validata's untimely size protest, it would most likely have been dismissed by the SBA because it fell outside of the applicable five-day window. 13 C.F.R. § 121.1004(a)(2)(i).

The SBA regulations provide for two types of protests: (1) those filed by the contracting officer and (2) those filed by other interested parties. *Id.* § 121.1004(a)-(b). A size protest filed by a party other than the contracting officer, "must be received by the contracting officer prior to the close of business on the 5th [business] day . . . after the contracting officer has notified the protestor of the identity of the prospective awardee." *Id.* § 121.1004(a)(2). The regulations further provide that although a "protest received after the allotted time limits must be forwarded to SBA. . . SBA will dismiss untimely protests." *Id.* § 121.1004(d); 48 C.F.R. § 19.302(c)(1).

Validata is correct that a contracting officer may also separately file a protest that is not subject to the five-day time limit, but such a protest can be filed *only* if she "has a reason to question the representation;" that type of protest different than one filed by a disappointed offeror such as Validata. 48 C.F.R. § 19.301-1(b);13 C.F.R. § 121.1004(b). Contrary to Validata's assertions in its brief, however, SBA regulations do not *require* a contracting officer to file her own size protest any time another offeror raises a question about an awardee's size status. Otherwise there would be no purpose to having two different types of size protests. And here, as explained in Ms. Cloar's declaration, she had no basis to question Portage's representation and thus had no reason to file her own size protest. Cloar Decln. at ¶ 6.

Validata did not meet the required five-day deadline, nor does the record support that Validata necessarily intended to immediately file a size protest. Validata's initial correspondence with UCOR on September 19, 2012 states only that Validata was "not sure" "[Portage] was a small business." AR Tab 27 at 1796. *Id.* Validata then followed up on October 1, 2012, which was well after the five-day deadline for filing a size protest. *Id.* at 1795. And, to the extent Validata contends DOE should have intervened earlier, although Validata filed its size protest with UCOR on October 9, 2012—nearly a month after it was notified of the award—no one at DOE was arguably notified of the ongoing dialogue between Validata and Portage until October 11, 2012, when Freda Hopper, SBA's Small Business Manager, was copied on an email from a UCOR employee. *Id.* at 1792. Ms. Hopper, however, is not the contracting officer, and her job was mainly to review UCOR's small business plan, to monitor UCOR's performance, and to help small businesses find opportunities to partner with large businesses. Cloar Decln. at ¶ 4. Ms. Cloar's declaration further states that she was not aware of

the ongoing dispute between Validata and UCOR likely until December 3, 2012, and that she

had no familiarity with how to handle size protests concerning a subcontract.  *Id.* at ¶ 5.

    As a result, even if the contracting officer *had* forwarded Portage's size protest:  (1) it

would not have been a protest brought by a contracting officer, and (2) the SBA still would have

have likely dismissed it as untimely.  Therefore, to the extent there were errors in the processing

of Validata's protest, they were not prejudicial.  *See Advanced Data Concepts, Inc. v. United

States*, 216 F.3d at 1057 (holding that to prevail in a bid protest, the protestor must show both

that there were significant errors in the procurement process and that those errors were

prejudicial); *CGS Administrators, LLC v. United States*, 110 Fed. Cl. 431, 461 (2013) (ruling for

the Government based upon plaintiff's failure to establish prejudicial error).

    In any event, even if the SBA had decided the protest, the outcome likely would not have

been in Validata's favor.  On May 22, 2013, the SBA made a formal size determination that

Portage was small under the size standard for the very same NAICS code specified in the

solicitation.  *See* SBA Decision, dated May 22, 2013.  In that size protest determination, the SBA

evaluated Portage's size as of February 15, 2012, the date that proposals were due for that

procurement, and determined that "the average number of employees is below the size standard

of 500."  *Id.*  The decision, thus strongly supports that Portage also would have been determined

to be small as of May 2012, which was the date of self-certification for the pre-qualification

phase of this procurement, and that Validata was not prejudiced as a result of the failure to

forward the untimely size protest.[6]

---

[6]  Pursuant to 13 C.F.R. § 121.504, the SBA determines the size of a small business
concern as of "the date the concern submits a written self-certification that it is small to the
government."  Here, UCOR evaluated whether an offeror was a small business only during the
pre-qualification process, it seems likely that the date of self-certification would be May 9, 2012,

Accordingly, there is no set of facts that establishes that Validata was prejudiced by the failure to forward its untimely size protest.

### D.     Validata Has Failed To Establish That The Government Acted In Bad Faith

Although Validata has not specifically pled that the Government acted in bad faith, nor did it brief the issue of bad faith, during the status conference held on July 8, 2016, the Court stated its belief that bad faith was at issue in this bid protest.  To the extent bad faith is an issue, there is no evidence that either party acted in bad faith or intentionally misled Validata.

With respect to allegations of bad faith, "Government officials are presumed to do their duty, and one who contends they have not done so must establish that defect by 'clear evidence.'" *Carolina Tobacco Co. v. Bureau of Customs & Border Prot.*, 402 F.3d 1345, 1350 (Fed. Cir. 2005) (citations omitted).  To meet this high burden and overcome the presumption of good faith by Government employees, a plaintiff must proffer "well-nigh irrefragable proof" of a "specific intent" to cause it injury.  *Kalvar Corp. v. United States*, 543 F.2d 1298, 1301-02 (Ct. Cl. 1976); *see Galen Med. Assocs., Inc., v. United States*, 369 F.3d 1324, 1330 (Fed. Cir. 2004) (requiring party to show "[a]lmost irrefragable proof," by "clear and convincing evidence, . . . of some specific intent to injure the plaintiff").  "Bad faith may be shown by 'evidence of some specific intent to injure' or by evidence that the government was 'actuated by animus toward the plaintiff.'"  *Ho v. United States*, 49 Fed. Cl. 96, 107 (2001), *aff'd*, 30 F.App'x 964 (Fed. Cir. 2002) (quoting *Kalvar Corp.*, 543 F.2d at 1302).  However, "[m]ere speculation on the part of the plaintiff is an insufficient basis to meet the rigorous test to establish bad faith." *J. Cooper & Assocs., Inc., v. United States*, 53 Fed. Cl. 8, 25 (2002). As one court explained,

---

or the date that offerors submitted pre-qualification materials.  AR Tab 14 at 710; AR Tab 16 at 16 at 949.

"[u]nsubstantiated suspicions and allegations [of bad faith actions] are not enough.  The proof must be almost 'irrefragable.'" *Cont'l Collection & Disposal, Inc., v. United States*, 29 Fed. Cl. 644, 652 (1993) (quoting *Spezzaferro v. FAA*, 807 F.2d 169, 173 (Fed. Cir. 1986)) (second alteration in original).

As demonstrated in Ms. Cloar's declaration, there was no intent to mislead Validata or to provide incorrect information in this matter.  Cloar Decln. at ¶¶ 5, 11.  More generally, the record suggests confusion regarding how to process subcontractor size protests, which are extremely uncommon.  Our search of the Westlaw database containing OHA decisions resulted in only one similar case challenging a subcontract that was the result of a competition performed by the prime contractor.  *See Size Appeal of GC Micro*, SBA No. 4365, 1999 WL 541522 (OHA July 1, 1999).  The record demonstrates that there was confusion among UCOR personnel who attempted to do the "right thing," AR Tab 10 at 404.  Similarly, because these types of protests are uncommon, the SBA also could not readily answer Validata's questions regarding how to file a size protest regarding a subcontract awarded by a prime contractor.  AR Tab 27 at 1811.  Nothing in the record, however, demonstrates that anyone at UCOR, DOE or the SBA was acting with animus towards Validata or with an intent to injure Validata.  *Ho*, 49 Fed. Cl. at 107; Cloar Decln. at ¶¶ 5, 11.

And, while it is unfortunate that there was confusion regarding how to file a protest. Validata was as capable of looking up the regulations regarding filing a size protest as anyone else.  *Fed. Crop Ins. Corp. v. Merrill*,  332 U.S. 380, 384-85 (1947) ("Just as everyone is charged with knowledge of the United States Statutes at Large, Congress has provided that the appearance of rules and regulations in the Federal Register gives legal notice of their contents.").

The regulations do not impose a duty on the prime contractor or the DOE to guide Validata through the size protest process.

With respect to Validata's objections regarding the proper NAICS code for this solicitation, Validata has not contended that it was provided with any incorrect advice or information regarding how to file a NAICS Code protest, and there is no evidence in the record that would substantiate such an allegation.  Cloar Decln. at ¶ 7.

Consequently, Validata cannot meet the high bar established by the Federal Circuit for demonstrating that any Government official acted in bad faith.

**E.**     **Validata Is Not Entitled To Bid Preparation And Proposal Costs**

As we have demonstrated above, the subcontract will terminate on September 30, 2016, and there will be nothing for the Court to enjoin.  Validata has also failed to establish that it is entitled to bid preparation and proposal costs, and there is no precedent either at this Court or at GAO for awarding such costs in these circumstances.

Bid preparation and proposal costs may be recovered only if three conditions are satisfied: (1) the agency committed a prejudicial error in conducting a procurement; (2) the error caused the protester to incur unnecessary bid preparation and proposal costs; and (3) the protestor shows that the costs it seeks to recover were both reasonable and allocable.  *Reema Consulting Servs., Inc. v. United States*, 107 Fed. Cl. 519, 532 (2012).  To be awarded bid preparation and proposal costs, a protester must not only demonstrate that the agency decision was arbitrary, capricious or otherwise unlawful, but it must also prove the amount and reasonableness of its actual costs.  *CNA Corp. v. United States*, 83 Fed. Cl. 1, 11 (2008), *aff'd*, 332 Fed. Appx. 638 (Fed. Cir. 2009); *Alfa Laval Separation v. United States*, 47 Fed. Cl. 305, 311-12 (2000).

38

Bid preparation and proposal costs are defined in 48 C.F.R. § 31.205-18 to mean "costs incurred in preparing, submitting, and supporting bids and proposals." *Id.*; *see also J.C.N. Constr., Inc. v. United States*, No. 12-353C, 2013 WL 593479, at *2 (Fed. Cl. Feb. 15, 2013). The protester bears the burden of showing that the costs for which it seeks compensation were allocable and reasonable. *Id.*; *Innovation Dev. Enters. of Am. v. United States*, 114 Fed. Cl. 213, 225 (2014), *aff'd*, 600 Fed. Appx. 743, 746 (Fed. Cir. 2015); *Lion Raisins, Inc. v. United States*, 52 Fed. Cl. 629, 631 (2002). In addition, the protester must provide sufficient detailed documentation so as to allow the court to determine the reasonableness of the costs for which it seeks reimbursement. *See Lion Raisins*, 52 Fed. Cl. at 636.

As we have demonstrated in the preceding sections, Validata cannot meet the first requirement for bid preparation and proposal costs because: (1) this procurement was conducted by a private party and not a "Federal agency," and (2) the Government did not commit a prejudicial error. *Reema*, 107 Fed. Cl. at 532. Even if Validata could establish a prejudicial error, a position with which we disagree, Validata has not demonstrated that its costs were allocable and reasonable. *See Innovation Dev.*, 52 Fed. Cl. at 631. Aside from that point, there is no precedent in this Court or at GAO that would support awarding bid preparation and proposal costs under these circumstances. And, there is nothing in DOE's contract with UCOR that would suggest that DOE would owe UCOR any money for UCOR's errors in processing a size protest. *E.g.*, *Gentex Corp. v. United States* 61 Fed. Cl. 49, 52-54 (2004) (declining to award bid preparation and proposal costs to anyone other than a prime contractor); *Sodexho Mgmt. Inc.-Costs*, B-289605.3, 2003 CPR ¶ 136, at *15 (Comp. Gen. Aug. 6, 2003) (stating that bid preparation and proposal costs can be awarded only in circumstances when the prime contractor establishes that it owes the subcontractor money).

Accordingly, the Court should not award Validata bid preparation and proposal costs.

**CONCLUSION**

For the foregoing reasons, the Court should dismiss Validata's complaint, or, in the

alternative grant the Government's cross-motion for judgment on the administrative record.

Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

s/ Douglas K. Mickle
DOUGLAS K. MICKLE
Assistant Director

OF COUNSEL:

s/Elizabeth Anne Speck
ELIZABETH ANNE SPECK
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, DC 20044
Tel:  (202) 307-0369
Fax:  (202) 305-7643

MARC KASISCHKE
Attorney
Office of the Assistant General Counsel for
Litigation, GC-31
U.S. Department of Energy
1000 Independence Avenue, S.W.
Washington, DC  20585

MARY COPELAND
Attorney
General and Contract Law
U.S. Department of Energy
Oak Ridge Office
P.O. Box 2001
Oak Ridge, TN 37831-8510

KAREN M. HOLZEN
Trial Attorney
Office of General Counsel
U.S. Small Business Administration
409 3rd Street, SW
Washington, DC 20416

September 1, 2016                                    Attorneys for Defendant

40